UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD OLIVER, JR., | : | CIVIL NO: 1:20-CV-01115 |
| | : | |
| Plain tiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Howard Oliver, Jr. ("Oliver"), seeks judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying his claims for

disability insurance benefits and supplemental security income under Titles II and

XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g)

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 16-1 to 16-7*.[2]  In February 2017, Oliver protectively filed[3] applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since December 2, 2016. *Admin. Tr.* at 139–63.  After the Commissioner denied his claim at the initial level of administrative review, Oliver requested an administrative hearing. *Id.* at 112–17.  And on October 13, 2018, Oliver, who was not represented at the time,[4] testified at a hearing before Administrative Law Judge ("ALJ") Gerard W. Langan. *Id.* at 44–76.

---

[2]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Oliver's claims.

[3]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, the record contains various dates for Oliver's applications. *See Admin. Tr.* at 139-63.  Although it is not clear how he arrived at that date, the ALJ identified February 22, 2017, as the date that Oliver protectively filed his applications. *Id.* at 26.  The exact day in February 2017 that Oliver filed his applications is not material in this case.

[4]  Oliver had a non-attorney representative from February 2017, through February 2018. *See Admin. Tr.* at 99–102, 134.  But by the time of the hearing, he was not represented.  After explaining that Oliver had the opportunity to be represented at

The ALJ determined that Oliver had not been disabled from December 2, 2016 (the alleged onset date), through March 26, 2019 (the date of the decision). *Id*. at 38.  And so, he denied Oliver benefits. *Id*.  Oliver appealed the ALJ's decision to the Appeals Council, which denied his request for review on May 8, 2020. *Id*. at 1–7.[5]  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In June of 2020, Oliver, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not in accordance with the law and is not supported by substantial evidence. *Doc. 1* at ¶ 7.  He requests that the court find that he is entitled to benefits or, in the alternative, remand the case to the Commissioner for further proceedings. *Id*. at 2 (Wherefore Clause).

The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 15, 16*.  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 18*.  The parties then filed briefs, *see docs.* 19, 20, and this matter is ripe for decision.

---

the hearing, the ALJ asked Oliver if he wanted to postpone the hearing so that he could obtain representation or if he wanted to proceed. *Id*. at 46–49.  Oliver elected to proceed at the hearing without representation. *Id*. at 49. And he completed a Right-to-Counsel form to that effect. *Id*. at 135.

[5]  By the time of his appeal to the Appeals Council, Oliver was represented by counsel. *Admin. Tr.* at 8–22, 136–38.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

4

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Oliver was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[6]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[6] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Oliver met the insured-status requirements through December 31, 2021. *Admin. Tr.* at 29.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On March 26, 2019, the ALJ denied Oliver's claims for benefits. *Admin. Tr.* at 23–42. At step one of the sequential-evaluation process, the ALJ found that Oliver had not engaged in substantial gainful activity since December 2, 2016, his alleged onset date. *Id.* at 29.

At step two of the sequential-evaluation process, the ALJ found that Oliver had the following severe impairments: hearing loss, obesity, depression, anxiety, and panic disorder. *Id*.

At step three of the sequential-evaluation process, the ALJ found that Oliver did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 29–32. More specifically, the ALJ discussed Listings 2.10, 12.04, and 12.06, and he determined that Oliver did not meet any of those listings. *Id*. In connection with his discussion of listings 12.04 and 12.06—mental health listings—the ALJ concluded that Oliver had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting and maintaining oneself. *Id*. at 30–31.

The ALJ then determined that Oliver has the RFC to perform work at all exertional levels, but with some non-exertional limitations. *Id*. at 32. He is limited to occasionally climbing ladders/scaffolds and frequently climbing ramps and stairs. *Id*. He "can understand, retain and carry out simple instructions with few work place changes[,]" but he cannot "engage in occupations with fast production rate or pace work" or "with noise above a level three intensity level." *Id*. He is limited to "simple, routine, repetitive tasks." *Id*. And he must have "no interaction

with the public, except for incidental contact and no more than occasional interaction with co-workers and supervisors." *Id.* Further, he "should not engage in group, team or tandem work and he should avoid financial transactions or calculations." *Id.* In making this RFC assessment, the ALJ reviewed Oliver's assertions and testimony; his treatment records, including his GAF scores; his activities of daily living; and the medical opinion evidence. *Id.* at 33–36.

At step four of the sequential-evaluation process, the ALJ found that Oliver is unable to do his past relevant work as a security guard, which is semi-skilled work, and as an auto mechanic, which is skilled work, given that he is now limited to unskilled work. *Id.* at 36–37.

At step five of the sequential-evaluation process, considering Oliver's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as waxer, mail sorter, and cleaner—that exist in significant numbers in the national economy that Oliver could perform. *Id.* at 38.

In sum, the ALJ concluded that Oliver was not disabled from December 2, 2016, through the date of his decision on March 26, 2019. *Id.* Thus, he denied Oliver's claims for disability insurance benefits and supplemental security income. *Id.*

## V.  Discussion.

Oliver presents four claims.[7]  First, we address his claim that remand is warranted based on new evidence.  Next, we address his claim that the ALJ improperly weighed the opinion of his treating psychiatrist, Dr. Manning.  Then, we address Oliver's claim that the limitations concerning Oliver's interactions with others that the ALJ set in the RFC is not supported by substantial evidence.  Finally, we address Oliver's claim that the Commissioner did not sustain her burden at Step Five of sequential-evaluation process.

### A.  New Evidence.

Oliver contends that a remand to the Commissioner is warranted based on new evidence.  The new evidence at issue consists of two functional-capacity assessments, both dated February 14, 2020. *Admin. Tr.* 9–10, 12–13.  One assessment was completed by Dr. Manning, Oliver's treating psychiatrist, and the other was completed by Dr. McNassor, Oliver's therapist. *Id.*  In these assessments, Dr. Manning and Dr. McNassor checked boxes indicating that Oliver had marked and extreme limitations in numerous functional areas. *Id.*  They also

---

[7]  At the beginning of his brief, Oliver's sets forth five claims, *see doc. 19* at 3, but he separately briefs only four claims, *see id.* at 8–15.  Although at the beginning of his brief, Oliver lists as a claim that the ALJ failed to properly assess limitations regarding work pace and/or attendance, his discussion of work pace and attendance is subsumed within his discussion of how the ALJ weighed the opinion of his treating psychiatrist, Dr. Manning.

11

set forth their diagnoses, and listed the medications that Oliver takes and their side effects. *Id*.  Further, they both noted that the period covered by their answers was from July 2017, until February 2020. *Id*. at 10, 13.

Although Oliver did not present the functional assessments of Dr. Manning and Dr. McNassor to the ALJ, he presented them to the Appeals Council, which concluded that they did not relate to the period at issue. *Id*. at 2.  "[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).  But in limited circumstances, evidence that was not before the ALJ may be the basis for a remand to the Commissioner under Sentence Six of 42 U.S.C. § 405(g). *Id*. at 592.  Sentence Six provides, in pertinent part:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).  The court may remand the case to the Commissioner under Sentence Six if three requirements are met: (1) the evidence is new; (2) the evidence is material; and (3) and there is good cause for why the claimant did not present the evidence to the ALJ. *Matthews*, 239 F.3d at 593.  The claimant has the burden of making this showing. *Pennington v. Comm'r of Soc. Sec.*, 683 F. App'x 168, 170 (3d Cir. 2017).

12

Here, Oliver contends that the new evidence meets all three requirements for a Sentence Six Remand. *Doc. 19* at 14–15.  The Commissioner, on the other hand, contends that the new evidence is not material because there is not a reasonable probability that the check-box forms submitted by Dr. Manning and Dr. McNassor would have changed the ALJ's decision. *Doc. 20* at 23–25.  Further, contending that Oliver has not shown good cause for not presenting the evidence to the ALJ, the Commissioner notes that Oliver had a legal representative assisting him with his claim at the administrative level for approximately a year and that even when he was unrepresented, he had the wherewithal to obtain an opinion letter from Dr. Manning. *Id.* at 25 n.1.[8]

We agree with the Commissioner that Oliver has not shown good cause for not presenting the new evidence to the ALJ.  Oliver contends that good cause exists because at the time of the hearing before the ALJ, he was not represented by counsel and he did not have the legal acumen to obtain the new evidence, which consists of functional assessments on proprietary forms used by counsel. *Doc. 19* at 14–15.  But "'[t]he fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand.'" *Pennington*, 683 F. App'x at 170 (quoting *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980)).  Here, despite the lack of counsel, Oliver was able to present medical

---

[8]  We address that opinion letter from Dr. Manning in connection with Oliver's next claim.

13

records and present his case.  And, as noted above, the ALJ informed Oliver of his right to the assistance of counsel and provided him an opportunity to continue the hearing to obtain counsel.  Oliver, nevertheless, waived his right to counsel.  Thus, the fact that Oliver did not have counsel at the hearing does not constitute good cause for not presenting the new evidence at issue here to the ALJ.[9]  Accordingly, a remand under Sentence Six of § 405(g) is not warranted.

### B.  Dr. Manning's Opinion.

Oliver next contends that the ALJ improperly weighed the opinion of Dr. Manning, his treating psychiatrist.  Before setting forth Dr. Manning's opinion and the ALJ's treatment of that opinion, we set forth the applicable standards regarding the evaluation of opinion evidence.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017); 20 C.F.R. § 416.927(a)(1) (applicable to claims filed before Mar. 27, 2017).  "In

---

[9]  Because we conclude that Oliver had not shown good cause, we do not address whether Dr. Manning and Dr. McNassor's assessments qualify as material evidence.

evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). But for claims—like Oliver's—filed before March 27, 2017, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). The applicable regulations provide that if "a treating source's medical opinion on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

15

The regulations also provide, however, that opinions on issues reserved for the Commissioner—such as whether a claimant is disabled and a claimant's residual functional capacity—are not considered medical opinions under the regulations and are not entitled to any "special significance" based on the source of the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d).  Nevertheless, "[t]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317.

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id*. at 317–18 (quoting *Plummer*, 186 F.3d at 429).  The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id*. at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

Further, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)).  "A decision denying benefits 'must contain specific reasons for

16

the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn *Soc. Sec. Rul. 96– 2p,* 1996 WL 374188, *5 (1996)).

In evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620.  Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Here, Dr. Manning wrote a letter, addressed to "To Whom It May Concern," dated October 22, 2018, which provided his opinion that Oliver is unable to maintain gainful employment:

> Our Psychiatry Department was informed that Howard Oliver does not have representation for his disability hearing.  Please note that he suffers from chronic severe mental health conditions including Bipolar Disorder Depressed Type and a Severe Unspecified Anxiety Disorder which despite

intensive treatment have only been partially responsive to frequent therapy and psychiatric medication management.  He is clearly unable to consistently maintain gainful employment due to the extreme severity of his chronic symptoms.  Thank you for considering our input.

*Admin. Tr.* at 354.  Dr. Manning attached to his letter a two-page treatment plan for Oliver dated August 13, 2018. *Id*. at 355–56.

The ALJ considered Dr. Manning's opinion that Oliver is unable to consistently maintain gainful employment, but he gave it little weight, articulating two reasons for doing so. *Id*. at 36.  First, the ALJ explained that Dr. Manning's opinion does not include a "functional analysis to allow one to get to the conclusion" he reached. *Id*.  Second, the ALJ concluded that Dr. Manning's opinion was inconsistent with the record:

> Moreover, the statement is inconsistent with the records including those provided by Dr. Manning which say the claimant's memory is intact, his mood is euthymic and thought process goal directed.  In addition, this opinion is inconsistent with the findings from the consultative examination, which showed that while the claimant's concentration and memory were mildly impaired he was cooperative and his social skills were fair.  The claimant's thought process was coherent, goal directed, and his affect was of full range and appropriate to speech and thought content.  Additionally, he was able to count backwards from ten, do simple calculations and multiplication.

*Id*. (citation to the record omitted).

Oliver contends that the ALJ was incorrect to claim that Dr. Manning made no functional analysis.  Rather, according to Oliver, Dr. Manning's opinion that he is unable to consistently maintain gainful employment due to the extreme nature of

18

his symptoms addresses his ability to maintain pace and attendance, and, thus, Dr. Manning did provide a functional analysis.  Oliver stretches Dr. Manning's opinion too far.  The ALJ reasonably concluded that the summary opinion of Dr. Manning did not contain a functional analysis.  In fact, Dr. Manning's opinion is little more than an opinion that Oliver is unable to work, which is not a medical opinion, but rather an administrative finding that is reserved to the Commissioner. Nevertheless, the ALJ explained his reasons for giving Dr. Manning's opinion little weight.

Oliver also contends that the ALJ's contention that Dr. Manning's opinion is inconsistent with the record is incorrect.  He argues that the ALJ is comparing apples to oranges given that the issue of work pace and attendance does not depend on whether he can remember, is happy, or has a goal-directed thought process (as the medical records the ALJ points to show), but whether his symptoms interfere with his ability to maintain attention and concentration.  Oliver's argument in this regard might have force if Dr. Manning actually addressed the issues of work pace and attendance, but, as noted above, it would be stretching Dr. Manning's conclusory opinion too far to say that he addressed those issues.

Oliver also contends that the ALJ erred in not addressing all the regulatory factors when weighing Dr. Manning's opinion.  Although an ALJ must consider the regulatory factors, he or she is not always required to explicitly discuss each of

the regulatory factors. *Moreta Mejia v. Berryhill*, No. CV 3:16-2558, 2018 WL 6930266, at *2 (M.D. Pa. May 16, 2018).  And if the ALJ's "explanation allows meaningful judicial review, it suffices." *Id.*  Here, the ALJ's discussion of Dr. Manning's opinion could have been more robust, but given the conclusory nature of Dr. Manning's opinion and the ALJ's overall discussion of the evidence, including the other opinion evidence in the record, we conclude that the ALJ's explanation allows for a meaningful judicial record.  And although Oliver points to evidence in the record that arguably would support Dr. Manning's opinion that he cannot work, we cannot reweigh the evidence or substitute our judgment for that of the ALJ. *See Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)).

Oliver further contends that the ALJ's error in weighing Dr. Manning's opinion is prejudicial because if given proper weight, Dr. Manning's opinion demonstrates that he has limitations in attention and concentration that the ALJ did not properly account for in his RFC.  We reject this argument because, as set forth above, the ALJ did not err in weighing Dr. Manning's opinion.

## C.  The Limitations in the RFC Regarding Oliver's Interactions with Others.

Oliver contends that substantial evidence does not support the ALJ's RFC assessment regarding limitations concerning interacting with others.  Before addressing Oliver's specific arguments regarding the ALJ's limitations regarding interacting with others, we set forth standards regarding the RFC assessment in general.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We

examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz*, 577 F.3d at 505. "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales*, 225 F.3d at 319.

Further, in setting the RFC, the ALJ must clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642

F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979))

Here, Oliver contends that the ALJ's RFC stating that he can have no interaction with the public (except incidental contact), but he can have occasional interaction with co-workers and supervisors is not supported by substantial evidence.  He asserts that the RFC in this regard is not supported by any medical opinion as there is no medical opinion that he can interact with co-workers and supervisors occasionally (i.e., up to one third of the day).

Oliver points out that Dr. Slowik, who conducted a consultative examination, found that he had marked limitations in interacting appropriately with the public, with supervisors, and with co-workers, and such marked limitations

23

would not support a finding that he can occasionally interact with co-workers and supervisors.  The ALJ, however, gave little weight to Dr. Slowik's opinion asserting that the clinical and diagnostic records do not support such a marked limitation and noting that "[t]he clinical findings showed the claimant was cooperative and his social skills were fair." *Admin. Tr.* at 34.  Oliver does not specifically argue that the ALJ's weighing of Dr. Slowik's opinion is not supported by substantial evidence.  Rather, he argues that "[e]ven assuming the ALJ properly rejected Dr. Slowik's findings of 'marked' as overstated, the RFC is not supported by substantial evidence because the ALJ dismisses the only medical opinion of record with regard to that particular limitation." *Doc. 19* at 9.  But there is, in fact, other opinion evidence in the record regarding Oliver's social limitations— specifically, the opinion of Dr. Chiampi, the state agency psychological consultant.

Dr. Chiampi completed a Psychiatric Review Technique, noting that Oliver has moderate limitations in his ability to interact with others, but concluding that he "retains capacity to complete simple routine tasks in schedule with adequate behavior." *Admin. Tr.* at 81, 91.  Dr. Chiampi also completed a Mental Residual Functional Capacity Assessment, rating, as pertinent here, Oliver moderately limited in his ability to interact appropriately with the general public, moderately limited in his ability to accept instruction and respond appropriately to criticism from supervisors, and moderately limited in his ability to get along with co-

workers or peers without distracting them or exhibiting behavioral extremes. *Id*.

84, 94.  In response to the directive that he explain (in narrative form) Oliver's

social-interaction capacities and/or limitations, Dr. Chiampi responded: "history of

social interactional problems which reduces social functioning; anxiety with

groups and travel." *Id*.  And as an "Additional Explanation" of his Mental RFC,

Dr. Chiampi wrote: "This 47 y o claimant with an anxiety disorder which reduces

his persistence, social functioning and coping.  Claimant performs basic ADL's

and retains capacity to carry out simple routine tasks in a schedule." *Id*.  The ALJ

gave Dr. Chiampi's opinion great weight. *Id*. at 36.

Although Oliver mentions Dr. Chiampi's opinion, he asserts that "Dr.

Chiampi failed to provide any qualification of Plaintiff's ability to interact with

others, merely concluding that Plaintiff's abilities are 'reduced.'" *Doc. 19* at 9.  But

as the above summary of Dr. Chiampi's opinion shows, that is not an accurate

characterization of Dr. Chiampi's opinion.  And given Dr. Chiampi's opinion, we

reject Oliver's contention that the ALJ's RFC regarding interacting with co-

workers and supervisors occasionally is not supported by any medical opinion.

Oliver also contends that the ALJ fails to explain why he treats his ability to

interact with the general public differently from his ability to interact with co-

workers and supervisors, noting that Dr. Slowik and Dr. Chiampi each assessed the

same degree of limitations (marked for Dr Slowik and moderate for Dr. Chiampi)

for all three groups.  The Commissioner does not address whether the ALJ erred in this regard.  The Commissioner does contend, however, that any error by the ALJ regarding limitations in Oliver's ability to interact with others was harmless.

"Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).  Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)).  "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).  Although an error may be harmless, we must be mindful that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Fargnoli*, 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

In this case, the Commissioner contends that any error by the ALJ was harmless because per the Dictionary of Occupational Titles ("DOT"), the three jobs identified by the vocational expert and the ALJ require only minimal, if any, interaction with co-workers and supervisors.  "'The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what

26

qualifications are needed to perform each job.'" *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (quoting *McHerrin v. Astrue,* Civil Action No. 09–2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010)).  Here, the three jobs that the ALJ found, based on the testimony of the vocational expert, that Oliver could do, along with their DOT 9-digit code numbers, are: 381.687-034 WAXER, FLOOR (any industry); 209.687-026 MAIL CLERK (clerical) alternate titles: mailroom clerk; mail sorter; postal clerk; and 323.687-014 CLEANER, HOUSEKEEPING (any industry) alternate titles: maid. *See Admin. Tr.* 38, 72–73; United States Department of Labor, Dictionary of Occupational Titles (1991), *available at* https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT.

"In the DOT occupational classification system, each set of three digits in the 9-digit code number has a specific purpose or meaning." *Id.* at Introduction, Parts of the Occupational Definition.  "Together, they provide a unique identification code for a particular occupation which differentiates it from all others." *Id*.  As important here, "[t]he middle three digits of the DOT occupational code are the Worker Functions ratings of the tasks performed in the occupation." *Id*.  "Every job requires a worker to function to some degree in relation to data, people, and things." *Id*.  "A separate digit expresses the worker's relationship to each of these three groups." *Id*.  "As a general rule, Worker Functions involving more complex responsibility and judgment are assigned lower numbers in these

three lists while functions which are less complicated have higher numbers." *Id*. The fifth digit relates to working with people. *Id*.

In this case, the fifth digit in each of the three occupations codes for the occupations identified by the vocational expert is an "8," which is the highest digit allowable in that position and which represents "Taking Instructions-Helping." *Id*. "Taking Instructions-Helping," in turn, is defined as: "Attending to the work assignment instructions or orders of supervisor.  (No immediate response required unless clarification of instructions or orders is needed.)  Helping applies to 'non-learning' helpers." *Id*. at Appendix B, Explanation of Data, People, and Things.

The Commissioner contends that because the DOT shows that the three jobs identified by the vocational expert and the ALJ do not require significant interaction with co-workers and supervisors, Oliver cannot demonstrate that any error by the ALJ in concluding that Oliver could occasionally interact with co-workers and supervisors was harmful legal error requiring a remand.  Oliver has not responded to the Commissioner's harmless-error argument.

Under some circumstances, an ALJ's error in failing to include a limitation, or a greater degree of limitation, in the RFC regarding social interaction may be harmless where such a limitation was not necessary for performance of the jobs identified by the vocational expert. *See, e.g., Holloman*, 639 F. App'x at 815–16 (concluding that any error by the ALJ in not including Holloman's moderate

limitation in social functioning in the question to the vocational expert was harmless given that Holloman "expounds no theory of how a reference to 'moderate limitation in social functioning' would have changed the vocational expert's answers" or the ALJ's RFC assessment and noting that "such a theory would be difficult to support" given that the DOT "strongly suggests" that the example occupations identified by the vocational expert "require little, if any, social interaction"); *S.J. v. Comm'r of Soc. Sec.*, No. 3:20-CV-560 (ATB), 2021 WL 1699916, at *13 (N.D.N.Y. Apr. 29, 2021) (concluding in a case where "the ALJ's RFC determination imposed greater restrictions on plaintiff's interaction with the general public than on her interactions with co-workers or supervisors," that the ALJ's failure to limit the claimant to minimal or superficial contact with co-workers was harmless error given that the vocational expert identified jobs that an individual with the claimant's RFC could perform that did not require significant interaction with other people); *Foulke v. Colvin*, No. 3:15-CV-2065, 2017 WL 2345641, at *1 (M.D. Pa. May 30, 2017) (concluding that any error by the ALJ "in failing to provide or explain the omission of a limitation regarding [the claimant's] ability to interact with supervisors" was harmless given that the claimant failed "to establish why, on the specific facts of this case, the alleged error was not harmless in light of the jobs that the vocational expert suggested"); *Sanchez v. Colvin*, No. 1:13-CV-02479-GBC, 2014 WL 5147793, at *17 (M.D. Pa.

Oct. 14, 2014) (concluding that any error by the ALJ in failing to include moderate limitations as to interacting with supervisors in her RFC assessment was harmless given that the positions that the ALJ found the claimant could perform had a DOT "people" code of 8, and citing cases for the proposition that "[m]any Courts have held that a position with this 'people' code is one that can be performed despite limitations in interacting with supervisors"); *Sweeney v. Colvin*, No. 3:13-CV-02233-GBC, 2014 WL 4294507, at *17 (M.D. Pa. Aug. 28, 2014) (concluding that any error by the ALJ in failing to include moderate limitations for the claimant's ability to interact appropriately with coworkers and supervisors, carry out detailed instructions, or respond appropriately to changes in the usual work environment was harmless given that one of the jobs identified by the vocational examiner was a potato-chip sorter, which in the DOT has a "people" code of 8, and citing cases for the proposition that "[m]any Courts have held that a position with this 'people' code is one that can be performed despite limitations in interacting with others").

Although Oliver has the burden to demonstrate that an error harmed him, *Holloman*, 639 F. App'x at 814, he has not even responded to the Commissioner's harmless-error argument.  Given Oliver's failure in this regard coupled with the fact that the jobs identified by the vocational expert in this case all have a people code of 8, which suggests they require little interaction with others, we conclude

30

that any error by the ALJ regarding how he set forth the interaction limitations in the RFC was harmless.

### D.  The Commissioner's Step 5 Burden.

Oliver's final claim is that the ALJ failed to satisfy the Commissioner's burden at Step 5 because the questions he posed to the vocational expert did not include the full extent of his limitations.  Because this argument relies on Oliver's other arguments, which we addressed—and rejected—above, this argument also fails.

### VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed.  An appropriate order follows.

_S/Susan E. Schwab_
Susan E. Schwab
United States Magistrate Judge